IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SAINT LAWRENCE COMMUNICATIONS LLC, § § § § | |
| *Plaintiff*, § | CASE NO. 2:15-CV-351-JRG |
| v. § § | |
| MOTOROLA MOBILITY LLC, § § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: Plaintiff Saint Lawrence Communications LLC's ("SLC") Motion for Enhanced Damages (Dkt. No. 75); SLC's Motion for Ongoing Royalty (Dkt. No. 78); and SLC's Motion for Prejudgment Interest, Postjudgment Interest, Taxable Costs, and Supplemental Damages (Dkt. No. 77). On July 17, 2017, the Court held a hearing at which the Parties presented oral argument on said motions. After considering the briefing and argument of the Parties, and for the reasons set forth below, the Court finds that SLC's Motion for Enhanced Damages should be **DENIED**, that SLC's Motion for Ongoing Royalty should be **GRANTED AS MODIFIED**, and that SLC's Motion for Prejudgment Interest, Postjudgment Interest, Taxable Costs, and Supplemental Damages should be **GRANTED AS MODIFIED**.

### I.   BACKGROUND

This is a case for patent infringement brought by SLC against Defendant Motorola Mobility LLC ("Motorola"). The Parties selected a jury on March 3, 2017, and the trial commenced on March 20, 2017. At the conclusion of the trial, the jury returned a unanimous verdict finding infringement and also finding that the claims in suit were not invalid. (Dkt. No. 34.) The jury also

found that Motorola's infringement was willful. (*Id.*) Thereafter, the Court set a briefing schedule on all remaining post trial issues (Dkt. No. 72), and pursuant thereto, SLC filed its Motion for Enhanced Damages (Dkt. No. 75) in addition to its Motion for Ongoing Royalty (Dkt. No. 78) and Motion for Prejudgment Interest, Postjudgment Interest, Taxable Costs, and Supplemental Damages (Dkt. No. 77). On July 17, 2017, the Court held a hearing at which the parties presented oral argument on multiple outstanding post trial issues, including the motions addressed herein, which are now before the Court.

## II.  SLC'S MOTION FOR ENHANCED DAMAGES

Under 35 U.S.C. § 284, "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo Elecs., Inc. v. Pulse Elecs, Inc.*, 136 S. Ct. 1923, 1932 (2016). However, enhanced damages are nevertheless "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," reserved for cases in which the defendant's conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

In exercising this discretion to enhance damages for willfulness, courts frequently look to the eight factors articulated in *Read Corp v. Portec, Inc*. 970 F.2d 816, 827 (Fed. Cir. 1992). The *Read* factors consist of: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct. *Id.*

Here, unsurprisingly, SLC argues that each of the *Read* factors weighs in favor of enhancing the jury's award of damages to the full extent permitted under § 284 (Dkt. No. 75 at 4). Motorola, on the other hand, argues the opposite. (Dkt. No. 86 at 1.)

After considering the totality of the circumstances, including the considerations set forth in *Read*, the Court finds that enhancement is not appropriate in this case. Ultimately, absent from the record is the type of egregious conduct that is characteristic of cases where enhancement is warranted. For example, Motorola did not deliberately copy SLC's technology. *Cf. Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 203 F. Supp. 3d 755, 763–64 (E.D. Tex. 2016) (enhancing in light of deliberate copying). In fact, the accused products were alleged to infringe because of chips made by Qualcomm, which are used industry-wide, rather than technology created by Motorola. (Dkt. No. 96 at 2.) Indeed, Motorola did not even have access to the infringing source code contained on the Qualcomm chips, which militates against a finding that Motorola deliberately copied SLC's technology. (*Id.*) There is also no basis to conclude that Motorola had an intent to harm SLC.

Moreover, many of the facts relied on by SLC in seeking an enhancement are more appropriately considered with respect to its pending Motion for Finding of Exceptional Case Under 35 U.S.C. § 285 (Dkt. No. 76). For example, "forcing SLC to unnecessarily brief disputes," and "taking positions contrary to its own evidence and to its own statements in the German proceedings" (Dkt. No. 75 at 2) are facts that, if true, are relevant in determining whether this case is one that "stands out from others with respect to the substantive strength of a party's litigating position . . . *or the unreasonable manner in which the case was litigated.*" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (emphasis added). While one of the *Read* factors is "the infringer's behavior as a party to the litigation," the discretionary nature of the

enhancement inquiry is not so inflexible as to compel enhancement where it is otherwise not warranted, particularly where a litigant's behavior can be addressed through other forms of sanction. *See Halo*, 136 S. Ct. at 1932–35; 35 U.S.C. § 285.  While this was an extremely hard fought and contentious case, characterized by obstruction and an unwillingness to confer in good faith by both sides, Motorola was not engaged in the type of "willful, wanton, or malicious" conduct which warrants enhancement. Accordingly, SLC's Motion for Enhanced Damages (Dkt. No. 75) is **DENIED**.

### III.     SLC'S MOTION FOR ONGOING ROYALTY

In its Motion for Ongoing Royalty, SLC requests that the Court award an ongoing royalty in the amount of $0.78 for each of Motorola's AMR-WB products, "including those that were explicitly identified at trial and all other Motorola products that are not 'colorably different'—that are made or sold between the date the Court enters final judgment and August 24, 2022." (Dkt. No. 78 at 1.) SLC argues that enhancing the implied royalty rate awarded by the jury (i.e., $0.39) by a factor of two accounts for changed circumstances and Motorola's continued willful infringement. (*Id.* at 2–3.) Motorola responds by arguing that an ongoing royalty determination is premature and should be stayed pending the conclusion of all appeals. (Dkt. No. 89 at 1.) In the alternative, Motorola argues that "any ongoing royalty should be no higher than the 39-cent-per-unit rate implied by the jury's verdict." (*Id.* at 11.)

#### A.     Staying the Ongoing Royalty Determination is Not Appropriate

As an initial matter, the Court is persuaded that due to finality concerns, the issue of ongoing royalties should be determined prior to the entry of final judgment. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882 (Fed. Cir. 2012) ("[T]he case is not 'final' because the district court has not yet determined ongoing royalties. An ongoing royalty is not the same as an

accounting for damages."); *see also Cioffi v. Google, Inc.*, No. 2:13-CV-103, 2017 WL 4011143, at *1 (E.D. Tex. Sept. 12, 2017) ("Although *Warsaw Orthopedic* is a non-precedential decision, it nonetheless provides some level of guidance as to what issues should be included in a final judgment."); *Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").Thus, it is at least prudent, if not essential, to address the issue of ongoing royalties now.

### B.     Legal Standard

A court's authority to award an ongoing royalty finds its origin in 35 U.S.C. § 283, which "permit[s] a court to award an 'ongoing royalty for patent infringement in lieu of an injunction' baring the infringing conduct." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017). The award of an ongoing royalty is thus equitable in nature. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1379 (Fed. Cir. 2013) ("While we may at times improperly use the term 'damages' as a shorthand term to encompass the concept of the right to some prospective monetary relief, that cannot change the equitable character of that relief."). However, a court is not required to grant a request for an ongoing royalty simply because a permanent injunction does not issue. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007) ("[A]warding an ongoing royalty where 'necessary' to effectuate a remedy . . . does not justify the provision of such relief as a matter of course . . . ."). If the Court does impose an ongoing royalty, the amount of such a royalty is guided, as this Court recently explained in *Cioffi*, by "the jury's implied royalty rate" and "a renewed analysis of a reasonable royalty based on a post-verdict hypothetical negotiations." *Cioffi*, 2017 WL 4011143, at *3; *see also Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL

5

3034655, at *7 (E.D. Tex. July 18, 2017) (Bryson, J.) ("*UroPep*").  Although "there is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008), "[t]o the extent the jury can be discerned to have made a decision based on the assumption that the patent was infringed and valid, and to the extent that other considerations do not compel a departure from the jury's assessment of the proper royalty rate, the Court should defer to the jury's decision as the finder of fact . . . ."). *UroPep*, 2017 WL 3034655, at *7 (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959))

### C. Analysis

#### i. *An Ongoing Royalty is Appropriate*

Here, there is no dispute between the Parties as to *whether* an ongoing royalty should be awarded.  Indeed, Motorola's expert, Ms. Kindler, opined in her report that the likely outcome of a hypothetical negotiation between the parties would have been a license for a running royalty. (Dkt. No. 78-3 at ¶ 11.)  The Court agrees.  An ongoing royalty is necessary in this case to adequately compensate SLC for the full scope of infringement as found by the jury.

#### ii. *An Ongoing Royalty Rate of $0.39 Is Appropriate and Should Be Limited to the Accused Products Identified at Trial*

The core dispute with respect to the amount of the ongoing royalty is whether the rate implied by the jury's verdict, $0.39, should be doubled to $0.78 in light of certain changed circumstances and Motorola's ongoing willful infringement. (Dkt. No. 78.) SLC also argues that this rate should be applied not only to the products which were explicitly identified at trial, but also to any other Motorola products which are not "colorably different" than those identified at trial. (*Id.* at 1.) Motorola responds by arguing that the ongoing royalty rate should be no higher

than the rate "apparently adopted by the jury—39 cents per infringing unit," and it also suggests that certain products which include a purported design around should be subject to a royalty of no more than $0.16. (Dkt. No. 89 at 4, 11.) According to Motorola, neither the changed circumstances nor the ongoing willful infringement support enhancing the ongoing royalty, as doing such would be punitive in nature, rather than compensatory. (*Id.*) Additionally, Motorola asserts that "SLC is wrong to argue, without evidence, that any newly-released, unaccused Motorola products should be the subject to any ongoing royalty obligation." (*Id.* at 10.) To award such, Motorola argues, would be to apply a royalty to products "with no showing of infringement." (*Id.*)

          a.      <u>An Ongoing Rate of $0.39 is Appropriate</u>

As previously explained, the Court finds it appropriate to begin its analysis with the royalty rate implied by the jury's verdict, which is $0.39. (*Id.* at 4, 11.) From this starting point, the Court applies a modified *Georgia-Pacific* analysis to account for changed circumstances and the *Read* factors to determine whether continued willful infringement calls for enhancement. *Id.* Here, nothing justifies departing from the jury's verdict.

With respect to the *Georgia-Pacific* analysis, SLC argues that the AMR-WB codec has experienced widespread adoption since the time of the hypothetical negotiation, which evidences commercial success and the codec's utility and advantages over previous codecs under *Georgia-Pacific* factors 8 and 9. (Dkt. No. 78 at 5.) Additionally, SLC argues that *Georgia-Pacific* factors 10 and 11 support increasing the ongoing royalty because the value and benefits received by Motorola from the use of the patented technology have increased as more smartphones utilize the standard. (*Id.*) According to SLC, these "changed circumstances" favor increasing the ongoing royalty rate. (*Id.*) Motorola responds by arguing that the widespread adoption of the AMR-WB codec does not support increasing the ongoing royalty rate because the jury already heard evidence

7

regarding such. (Dkt. No. 89 at 1, 5.) Thus, Motorola argues that the widespread adoption of the AMR-WB codec is necessarily not a "changed circumstance," since it was already considered by the jury when it reached its implied royalty rate. Additionally, Motorola argues that its development and potential implementation of a workaround constitutes a changed circumstance which favors decreasing the ongoing royalty. (*Id.* at 6.)

As an initial matter, the Court is not persuaded that the facts relied on by the Parties reflect circumstances not already considered by the jury or appropriate for consideration by the Court. As Motorola points out, the jury heard evidence at trial regarding the subsequent widespread adoption of the AMR-WB codec (*See, e.g.*, Dkt. No. 50, 3/21/2017 PM Trial Tr. at 16:1–6.) Moreover, Mr. Weinstein, SLC's damages expert, testified that in the context of the hypothetical negotiation the Parties have "the benefit of hindsight" and thus the jury should assume that the negotiating parties "know things that haven't even happened yet," including "information about the success of the products." (Dkt. No. 51, 3/21/2017 Sealed Trial Tr. at 6:23–7:15.) Even assuming *arguendo* that Mr. Weinstein did not consider such evidence in the royalty rate he presented to the jury, the notion that the jury could not have considered such evidence is wrong, *see, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–1334 (Fed. Cir. 2009); *Affinity Labs of Texas, LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 898 n.6 (E.D. Tex. 2011), and the suggestion that the jury did not consider such evidence is unsupported by the record. Motorola's purported workaround fares no better. At this point, there is no basis to conclude that Motorola's purported workaround actually avoids infringing (or that it does not). Thus, none of the "changed circumstances" urged by the Parties justify deviating from the royalty rate implied by the jury's verdict.

Alternatively, if the Court were to consider both the widespread adoption of the AMR-WB codec and Motorola's workarounds, the end result is a wash: one weighs in favor of increasing the royalty and the other weighs against such.

Finally, the Court has already found that the *Read* factors do not favor enhancing the jury's verdict and thus, for the same reasons explained *supra*, the Court declines to enhance the ongoing royalty rate implied by the jury's verdict. Accordingly, the Court finds that an ongoing royalty rate of $0.39—the same rate impliedly awarded by the jury—is appropriate to compensate SLC for Motorola's ongoing infringement.

### b. The Ongoing Rate Should Only Be Applied to Accused Products Identified at Trial

The final issue raised in the briefing on SLC's Motion for Ongoing Royalty is whether unaccused products should be subject to the ongoing royalty awarded herein. SLC argues that it is "entitled to an ongoing royalty for any Motorola product that is not 'colorably different' from the adjudicated infringing products." (Dkt. No. 78 at 7.) According to SLC, the trial testimony of its experts, Drs. Kondoz and Sinha, supports their theory that "any Motorola product that contains a Qualcomm implementation of the AMR-WB codec is not 'colorably different' from the adjudicated infringed products." (*Id.*) SLC only identifies one such product by name (the Moto Z phone), but it suggests that Motorola made other such phones after the service of infringement contentions in August 2015. (*Id.*) Motorola argues that unaccused products which were not presented to the jury should not be subject to the ongoing royalty in this case. (Dkt. No. 89 at 10.) To adopt SLC's position, Motorola contends, would be to prejudge the question of infringement with regard to such newly-released, unaccused products. (*Id.*)

The Court agrees with Motorola. At this juncture, it would be inappropriate to expand the jury's verdict to encompass not only products which were identified at trial but also products that

were not previously accused of infringing or otherwise identified in this lawsuit. Such a result raises many concerns. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996) ("[T]here is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago."). If SLC believes that certain newly-released, unaccused products infringe its patents, it can seek appropriate relief as part of a new action.

### IV. SLC'S MOTION FOR PREJUDGMENT INTEREST, POSTJUDGMENT INTEREST, TAXABLE COSTS, AND SUPPLEMENTAL DAMAGES

#### A. Prejudgment Interest

A successful plaintiff is entitled to "no [] less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The interest rate used to calculate prejudgment interest and the method and frequency of compounding are left to the discretion of the court. *Soverain Software LLC v. Newegg Inc.*, 836 F. Supp. 2d 462, 480 (E.D. Tex. 2010). SLC requests that the Court award prejudgment interest calculated at the prime rate and compounded quarterly. (Dkt. No. 77 at 2–3.) In its brief, Motorola requests that the Court award prejudgment interest "at a rate no higher than the U.S. Treasury Bill ('T-bill') rate." (Dkt. No. 88 at 4.) At the hearing on SLC's post trial motions, Motorola clarified that it was seeking the annual T-bill rate. (Dkt. No. 116 at 47:13–16.) Additionally, Motorola requests that the interest be compounded annually. (Dkt. No. 88 at 5.)

After considering the briefing and the particular circumstances presented in this case, the Court finds it appropriate to award SLC prejudgment interest at the five year T-bill rate, compounded monthly.

### B. Postjudgment Interest

Pursuant to 28 U.S.C. § 1961, the Court finds that SLC is entitled to an award of postjudgment interest. *See* 28 U.S.C. § 1961(a).

### C. Taxable Costs

Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, the Court finds that SLC is the prevailing party and, as such, is entitled to costs. *See* Fed. R. Civ. P. 54(d)(1).

### D. Supplemental Damages

SLC "requests supplemental damages for Motorola's infringement for the period between the March 6, 2017 assessment of damages (upon which the jury verdict is based) and the date the Court enters final judgment." (Dkt. No. 77 at 6.) As this Court has observed, "supplemental damages [should] be awarded to compensate the plaintiff for any infringement occurring between the date of the jury's verdict and the date of the judgment." *Nat'l Instruments Corp. v. Mathworks, Inc.*, No. 2:01-cv-11, 2003 WL 24049230, at *4 (E.D. Tex. June 23, 2003). "A failure to award such damages would grant an infringer a windfall by enabling it to infringe without compensating a patentee for the period of time between the jury's verdict and the judgment." *Id.*

In light of the Court's previous rulings declining to enhance the jury's verdict for willfulness and setting the ongoing royalty rate at the same rate implied in the jury's verdict, the Court hereby awards SLC supplemental damages at a rate of $0.39 per infringing unit. For purposes of simplicity, the Court will award SLC the ongoing royalty rate of $0.39 beginning on March 6, 2017, rather than the issuance date of the Court's Final Judgment, which shall fairly account for the award of said supplemental damages.

## V. CONCLUSION

For the reasons stated above, SLC's Motion for Enhanced Damages (Dkt. No. 75) is

**DENIED**, SLC's Motion for Ongoing Royalty (Dkt. No. 78) is **GRANTED AS MODIFIED**, and SLC's Motion for Prejudgment Interest, Postjudgment Interest, Taxable Costs, and Supplemental Damages (Dkt. No. 77) is **GRANTED AS MODIFIED**.

**So ORDERED and SIGNED this 8th day of December, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE